J-S44041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON JOSEPH BEE, | : | |
| | : | |
| Appellant | : | No. 120 EDA 2018 |

Appeal from the Judgment of Sentence March 3, 2016
in the Court of Common Pleas of Bucks County,
Criminal Division at No(s):  CP-09-CR-0004323-2015

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:             **FILED AUGUST 21, 2018**

Jason Joseph Bee ("Bee") appeals, *pro se*, from the judgment of sentence imposed following his convictions of possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia.  ***See*** 35 P.S. §§ 780-113(a)(16), (30), (32).  We affirm.

On May 5, 2015, Bensalem police pulled over a red Ford Mustang for speeding.  Police issued the driver of the Mustang, Bee, a traffic ticket.  Police learned that Bee's vehicle was registered at 414 Daylily Drive in Langhorne, Pennsylvania.

On May 11, 2015, an anonymous person called Bensalem police and told an officer that Bee was a large-scale marijuana dealer in the Philadelphia area who sold marijuana from a red convertible Mustang.  The anonymous person

told the officer that Bee lives with his mother at 414 Daylily Drive, and provided Bee's cell phone number.

Thereafter, Bensalem police searched for Bee's information in a police database and learned that Bee's residence was registered at 414 Daylily Drive. Police also learned that the cell phone number provided by the anonymous person was registered to Bee at the same address, and that the Middletown police had previous contacts with Bee at the same address.

On May 12, 2015, Bensalem police went to 414 Daylily Drive and identified Bee's red Ford Mustang in the driveway. While police were at the residence, they also conducted a "trash pull."[1] Police recovered the following items from the trash pull: (1) two pieces of mail addressed to Agnes Levin (Bee's mother) at 414 Daylily Drive; and (2) a gallon size plastic bag that had the word "Purple" written on it. Police used a field test kit to test for the presence of drugs inside the gallon size plastic bag. The field test kit indicated a positive result for marijuana.

Police obtained a search warrant to search Bee's residence at 414 Daylily Drive. On May 14, 2015, police executed the search. The following items were located inside Bee's bedroom:

1. A one-pound bag of marijuana hidden in tan pants;

---

[1] A trash pull is a law enforcement investigative technique, where officers seize household trash that is left at the street/curbside during routine trash collection. The trash is seized and taken to the police department, where the trash is searched for evidence.

2.    Two bags of marijuana found in different pants;

3.    Several marijuana joints and loose marijuana in an ashtray;

4.    Eight glass tubes used for crack cocaine;

5.    Three boxes of new sandwich bags from a desk;

6.    Used sandwich bags and large bags from the desk;

7.    A digital scale found in the desk that had marijuana and cocaine residue on it;

8.    A bottle with twenty-eight yellow pills;

9.    Various rolling papers;

10.    Various pieces of mail in [Bee's] name;

11.    A Social Security card for [Bee];

12.    An identification card for [Bee];

13.    Two birth certificates for [Bee];

14.    Several bags of marijuana inside a black bag inside a closet;

15.    Three marijuana pipes; and

16.    $770.00 in United States currency.

In total, police seized 1,386.9 grams (3.06 pounds) of marijuana in Bee's bedroom.

Bee was later arrested and charged with a variety of offenses. Bee filed a Motion to Suppress the evidence seized from his home, which the trial court

denied. In 2015, a jury trial was held, where Bee represented himself.[2] On November 10, 2015, the jury found Bee guilty of the above-mentioned crimes.

On March 3, 2016, Bee was sentenced to an aggregate prison term of three to eight years.[3] On March 14, 2016, Bee filed a "Post-Sentence Motion to Modify Sentence be Waived from Bucks County and Moved to Superior Court," which the trial court denied. On May 27, 2016, Bee filed an untimely appeal to this Court, which he subsequently withdrew. Thereafter, Bee submitted a Petition pursuant to the Post Conviction Relief Act ("PCRA")[4] seeking to reinstate his post-sentence and appeal rights *nunc pro tunc*. The PCRA court appointed Bee counsel. Thereafter, Bee filed a Motion seeking to proceed *pro se*. The PCRA court granted Bee relief pursuant to his PCRA Petition. That same day, the court held a ***Grazier***[5] hearing, after which it determined that Bee voluntarily waived his right to counsel and could represent himself.

In July and August of 2017, Bee filed three Post-Sentence Motions, namely a "Motion for Sentence Modification," a "Post-Sentence Motion," and

---

[2] Prior to accepting Bee's *pro se* request, the trial court conducted a thorough colloquy. The court also repeatedly advised Bee that he should retain counsel.

[3] On December 7, 2015, prior to the imposition of sentence, Bee filed a Notice of appeal. The Notice of appeal was subsequently dismissed.

[4] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[5] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

a "Supplement Amendment of Post-Sentence Motion," all of which were denied. Bee, *pro se*, filed a timely Notice of appeal and a court-ordered Concise Statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Bee raises the following issues for our review:

1) Did the [t]rial [c]ourt err, pursuant to Pa.R.Crim.P. 581(H), in denying [Bee's] [M]otion to [S]uppress the evidence recovered as a direct result of the search warrant and affidavit, because the Commonwealth did not go forward with any evidence, and where it was patently clear [Bee] was never offered an opportunity to develop the fact that the Police lacked [c]onstitutionally satisfactory probable cause?

2) Pursuant to Pa.R.E. 702, does the Dequenois-Levine (D-L) Reagent in the Narco Pouch Drug Test meet **Frye**[6] [s]tandards to be established as trustworthy probable cause for a search warrant, especially because it was tested on an [e]mpty clear freezer bag that was allegedly found in [Bee's] trash?

3) Was [Bee] denied his [c]onstitutional right to a fair trial where the [t]rial [c]ourt failed to appoint stand-by counsel (or advise [Bee] he could retain stand-by counsel) under Pa.R.Crim.P. [ ] 121(D), since it is clear the [trial court] did not explain the standards of conduct and stand-by counsel could have answered questions of concern of [Bee] during [t]rial if [Bee] was unsure of what was occurring in [o]pen [c]ourt?

4) Did the [t]rial [c]ourt err, in failing to order a competency evaluation, pursuant to **Indiana v. Edwards**, 554 U.S. 164 (2008), prior to granting [Bee's] request to represent himself, where [Bee] had suffered from mental problems?

5) Was the evidence sufficient as a matter of law, to prove beyond a reasonable doubt that [Bee] was guilty of possession of cocaine?

---

[6] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

Brief for Appellant at 3-4 (citations corrected, emphasis omitted, footnote added).

Bee raises the following issue, in a supplemental brief,[7] for our review:

6) Did the [s]entencing [c]ourt err in denying [Bee's] "Motion for Sentence Modification" requesting relief upon review of the [s]entence with respect to available mitigating factors, thus misapplying the Sentencing Guidelines, adding points to [Bee's] offense gravity score for [an] offense [Bee] was NEVER charged with, resulting in an abuse of discretion when it handed down an aggregate [s]entence of three to eight years incarceration?

Supplemental Brief for Appellant at 7 (emphasis in original).

In his first claim, Bee alleges that the trial court erred in denying his pre-trial Motion to Suppress the evidence recovered from his bedroom. *See* Brief for Appellant at 29, 34, 38-39. Bee asserts that the Commonwealth violated Pa.R.Crim.P. 581(H), because the Commonwealth did not present testimony to establish the validity of the statements set forth in the warrant and Affidavit of probable cause. *See id.* at 29, 32, 33; *see also id.* at 39 (claiming that the Affidavit of probable cause must be complete on its face). Bee claims that he was not offered an opportunity to develop the record

_____

[7] Attached to Bee's brief is a "Supplemental Brief," in which Bee raises a sixth issue for our review. Since Bee is a *pro se* appellant, we will address his sixth claim. *See Commonwealth v. Lyons*, 833 A.2d 245, 251-52 (Pa. Super. 2003) (declaring willingness to construe materials filed by a *pro se* litigant liberally, while recognizing that *pro se* status generally confers no special benefit on an appellant). Bee's Supplemental Brief will be cited as Supplemental Brief for Appellant.

regarding probable cause to issue the warrant. ***See id.*** at 29, 34. Bee argues that the field test was unreliable, that the police made false statements, and that the anonymous tip was false. ***See id.*** at 30-32, 35, 36-38; ***see also id.*** at 35-37 (arguing that the police did not corroborate the tip or the reliability of the tipster).

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is

> whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

> [T]he question of whether probable cause exists for the issuance of a search warrant [is] answered according to the "totality of the circumstances" test articulated in ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in ***Illinois v. Gates***, 462 U.S. 213 (1983). The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information.

***Commonwealth v. Huntington***, 924 A.2d 1252, 1255 (Pa. Super. 2007) (some citations and quotation marks omitted).

Further, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). The standard of proof is preponderance of the evidence. *Id.*, cmt. "[A] defendant at a suppression hearing has the right to test the veracity of the facts recited in the affidavit in support of probable cause." *Commonwealth v. James*, 69 A.3d 180, 187 (Pa. 2013) (citation omitted). When testing the veracity of the facts recited in the affidavit, a defendant must make "a substantial preliminary showing [that] the affiant[(s)] knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit." *Id.* at 188 (citation omitted).

Here, the Commonwealth introduced the Affidavit of probable cause and the search warrant into evidence at the suppression hearing. N.T., 10/27/15, at 75. The averments contained in the Affidavit of probable cause were set forth, in relevant part, as follows:

> On 5/5/15, Cpl. Cowden from the Bensalem Township Police Department issued a traffic ticket to [Bee] [ ] for speeding in a Red Ford Mustang (PA Tag NB - 0016). A Penn [DOT] records check was conducted on this vehicle and learned that it is registered to 414 Daylily Dr. Langhorne, PA 19047 to an Agnes Levine (12/28/1941).
>
> On 5/11/15, Officer Jennifer Petine spoke with the complainant over the phone who wished to remain anonymous. The anonymous complainant state[d] [that] [Bee] is a large scale, high grade marijuana dealer. Bee sells four different [strains] of high grade marijuana from a red convertible Ford Mustang. Bee sells marijuana in the area of Eddington, Andalusia, Northeast Philadelphia and Croydon. The complainant state[d] that Bee

- 8 -

keeps the marijuana in a tote bag in his Ford Mustang. The complainant stated that Bee sells the marijuana in various bars in the North East sections of Philadelphia and Bensalem.

On 5/11/15, Officer Gansky spoke with the same anonymous complainant in reference to [Bee]. During that conversation[,] Officer Gansky learned that Bee lives with his mother in Langhorne, Bucks County, but also stops by his girlfriend's house in North East Philadelphia. Bee lives at his mother's residence at 414 Daylily Dr. Langhorne, PA 19047. The anonymous source stated that Bee's cell phone number is [(redacted)]. The anonymous source stated that Bee keeps a large amount of money from the marijuana sales at his mother's residence.

You[r] affiants also ran a computer check using the T.L.O. computer system. T.L.O. is an information database utilized by law enforcement. Your affiants learned that [Bee] is registered to 414 Daylily Drive Langhorne, PA 19047 as his residence. He is listed to that address from August of 1998 to the present. Officer Gansky was able to T.L.O. this phone number and learned that it is registered to [Bee] at 414 Daylily Drive, Langhorne, PA 19047.

Officer Gansky learned that the Middletown Township Police Department has also had contacts with [Bee] where he is listed at 414 Daylily Drive, Langhorne, PA 19047.

On 5/12/15[,] Officer Gansky and Officer Hill conducted a trash pull at 414 Daylily Drive Langhorne, PA 19047. A trash pull is a common law enforcement investigative technique utilized by the Bensalem Police Department. A trash pull is conducted when a suspect places their household trash to the street/curbside for routine trash collection. The trash is then seized and taken to the Bensalem Police Department where it is searched through for evidence of violations of Title 35. The following items were recovered from 414 Daylily Drive Langhorne, PA 19047 during the 5/12/15 trash pull:

X1: 2 pieces of mail from 414 Daylily Drive Langhorne, PA 19047. The mail is to Agnes Levin[.]

X2: A gallon size plastic bag with marijuana residue in it. The plastic bag had the name of "Purple" on there. Based on your affiant['s] training and experience, "Purple" is believed to be a specific brand of marijuana.

While conducting a trash pull at 414 Daylily Drive Langhorne, PA [19047], your affiant[s] also observed a red Ford Mustang parked in the driveway. The tag on the vehicle is (HNB-0016). This is the same vehicle that Jason Bee was stopped in by Corporal Cowden.

The marijuana [was] field tested using the Narco field test kit and a positive result for marijuana was attained. Furthermore, the marijuana was sent to the Bucks County Crime Laboratory.

A criminal history was completed on [Bee]. The criminal history revealed that Bee was arrested for the following drug offenses.

On 9/11/1991[,] Bee was arrested by Philadelphia Police Department for possession of controlled substance. Bee was placed in Accelerated Rehabilitation Program.

On 7/2/1992[,] Bee was arrested by Philadelphia Police Department for possession of controlled substance. Bee pled guilty.

On 11/9/1993[,] Bee was arrested by Philadelphia Police Department for possession of controlled substance. Bee was found guilty.

On 6/28/1994[,] Bee was arrested by the Wildwood Police Department for possession of marijuana and use of drug paraphernalia. Bee pled guilty to possession of marijuana.

On 12/7/1994[,] Bee was arrested by the North Wildwood Police Department for distribution of heroin/cocaine, manufacture/distribute controlled substances, possession of controlled substances, possession of marijuana, and use of drug paraphernalia. Bee was found guilty of manufacture/deliver controlled substances.

On 5/11/2008[,] Bee was arrested by the Lower Southampton Police Department for possession of marijuana and use of drug paraphernalia. Bee pled guilty to possession of marijuana.

The trash pull mentioned above gives credibility to [the] witness and[,] furthermore[,] it freshens the complainant's information to

as recently as today. This proves that criminal activity is ongoing and evidence of this will be recovered.

The facts[,] when considered in their totality, establish probable cause to believe that 414 Daylily Drive Langhorne PA, 19047 contains evidence of violations of Title 35 including[,] but not limited to[,] marijuana and marijuana paraphernalia, evidence of use and distribution of marijuana and other controlled substances, and evidence of any proceeds (cash or material) from the use and distribution of marijuana.

Affidavit of Probable Cause, 5/13/15, at 2-4 (unnumbered).

Here, the Affidavit of probable cause explained the manner in which the police became aware of Bee's drug activity. It described the timing of the police's investigation and the steps taken by the police officers to corroborate and verify the tip they received. Further, the substance in the trash was found to be marijuana. Thus, the totality of the circumstances was sufficient to demonstrate a fair probability that contraband would be found on the premises. Moreover, Bee did not demonstrate that the averments contained in the Affidavit were false or were made with reckless disregard for the truth. *See James*, 69 A.3d 188 (stating, "the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof.") (citation omitted). Thus, the trial court properly denied Bee's Motion to Suppress, and his first claim is without merit.

In his second claim, Bee argues that, pursuant to Pa.R.E. 702, the Commonwealth must show that the field test kit satisfied the standards set forth in *Frye*, *supra*, to establish the requisite probable cause for the issuance of the search warrant. *See* Brief for Appellant at 40-42. Bee contends that

- 11 -

the D-L Reagent "continually renders false positives for marijuana when tested on substances such as caffeine (coffee, tea), lavender, oregano, tobacco, nut meg, sucrets (cough suppressants), and numerous kinds of vegetable matter[.]" *Id.* at 41. Bee further claims that the testing could not have indicated the presence of marijuana in an empty freezer bag found in his trash. *See id.* at 40, 42. Bee asserts that because the D-L Reagent test is flawed, the police lacked probable cause for the search warrant. *Id.* at 42.[8]

Here, Bee has made no showing, other than bald assertions, that the field test was inaccurate or unreliable. *See* Trial Court Opinion, 4/11/18, at 4 (noting that Bee "did not introduce any evidence to support his claim that the test used by the police in this case was inaccurate."); *id.* at 4-5 (stating that the only evidence Bee introduced were "two articles of unknown origin and authorship," that were not properly authenticated or established the unreliability of the "Nacro field test kit" used in this case). Further, Bee does not show that the averments regarding the field test kit contained in the

---

[8] We note that Bee's has not cited to relevant authority to support his suppression claim that the field test kit was unreliable and could not have been used to support probable cause. *See* Pa.R.A.P. 2119(a) (declaring that the rules require an appellant to provide in the argument section of his or her brief "such discussion and citation of authorities as are deemed pertinent."). Indeed, Pa.R.E. 702 pertains to expert witnesses and the admissibility of expert testimony at **trial**. *See* Pa.R.E. 702. Similarly, Frye pertains to the admissibility of expert evidence or scientific evidence at **trial**. *See Frye*, 293 F. at 1014. While this Court will not develop Bee's argument or act as his appellate counsel, *see Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017), we will briefly address Bee's second claim.

Affidavit were false or were made with reckless disregard for the truth. **See**

***James, supra***. To the extent, Bee argues that the field test kit was

inadmissible, we note that probable cause may be supported by inadmissible

evidence. ***See Commonwealth v. Weaver***, 76 A.3d 562, 567-68 (Pa. Super.

2013), ***aff'd***, 105 A.3d 656 (Pa. 2014) (holding that probable cause to arrest

can be supported by the existence of evidence that is inadmissible at trial).

Thus, Bee's second claim does not entitle him to relief.

In Bee's third claim, he challenges the court's discretion concerning the

appointment of counsel. **See** Brief for Appellant at 43-47. Bee argues that,

pursuant to Pa.R.Crim.P. 121(D), the trial court was compelled to appoint him

standby counsel. ***See id.*** at 43, 45, 46. Bee claims that the trial court did

not advise him of the Standards of Conduct required of a *pro se* defendant.

***See id.*** at 44-45.

> A criminal defendant has a constitutional right, necessarily implied under the Sixth Amendment of the U.S. Constitution, to self-representation at trial. However, before a defendant will be permitted to proceed *pro se*, he or she must knowingly, voluntarily, and intelligently waive the right to counsel. To ensure that a waiver is knowing, voluntary, and intelligent, the trial court must conduct a "probing colloquy," which is a searching and formal inquiry as to whether the defendant is aware both of the right to counsel and of the significance and consequences of waiving that right.

***Commonwealth v. Spotz***, 18 A.3d 244, 263 (Pa. 2011) (citations omitted).

Further, "[w]hen the defendant's waiver of counsel is accepted, standby

counsel *may* be appointed for the defendant. Standby counsel shall attend

the proceedings and shall be available to the defendant for consultation and

advice." Pa.R.Crim.P. 121(D) (emphasis added); ***see also Commonwealth v. Spotz***, 47 A.3d 63, 82 (Pa. 2012) (stating that "neither the United States Supreme Court nor our Rules of Criminal Procedure mandate the appointment of standby counsel[.]"). While "Rule 121 suggests the advisability of appointing standby counsel… especially in long or complicated cases," the trial court is not required to do so. ***Spotz***, 47 A.3d 63 at 82.

On September 9, 2015, the trial court judge and Bee engaged in the following dialogue:

THE COURT: All right. You want to represent yourself?

[Bee]: Absolutely.

THE COURT: And you understand that having a lawyer appointed, that lawyer would be able to make legal arguments on your behalf?

[Bee]: I already filed motions. I already did that all myself.

THE COURT: All right. Well, there's certain requirements that we need to cover. You're not a lawyer. You're not trained in the law. And what we –

[Bee]: I know the law enough that I filed motions –

THE COURT: Can I finish, please?

[Bee]: Okay.

THE COURT: The lawyer that would be appointed to you would be a lawyer from our conflict list that would have experience in criminal defense, who would be a skilled advocate, who would be able to make legal arguments and cross-examine on your behalf. Those are qualities or skills or training that you don't have. And if you represent yourself, you're going to have to conduct a trial the same as a lawyer would. In other words, the judge is not

going to take into consideration necessarily that you're not a lawyer. You'll have to play by the same rules.

[Bee]: I understand.

THE COURT: We have Rules of Criminal Procedures and Rules of Evidence, and you'll be held to the same standard as a lawyer would in asking questions and making legal arguments. Do you understand that?

[Bee]: Yes. Absolutely.

THE COURT: And you understand that we're willing to appoint a lawyer off the conflict list for you free of charge; it won't cost you anything?

[Bee]: Judge, you appointed Ellissa Heinrichs to my –

THE COURT: I just want to know if that's –

[Bee]: No. No. No, it's not acceptable. I want to represent myself.

N.T., 9/9/15, at 8-10.

On October 27, 2015, the trial court appointed a public defender to represent Bee. N.T., 10/27/15, at 17. However, Bee rejected the public defender's representation and adamantly opposed the aid of the public defender's office. *Id.* at 18. At the hearing, the court explained to Bee the charges that were being brought against him as well as the period of time Bee could be imprisoned if found guilty of those charges. *Id.* at 18-25. Bee indicated that he understood the nature of the proceedings, and that he was able and willing to conduct his own defense. *Id.* at 25-30.

In light of this testimony, the trial court addressed Bee's third claim as follows:

> In the instant case the [c]ourt made counsel available to [Bee] on at least two separate occasions. [Bee] spoke to at least four different attorneys. [Bee] chose, however, to proceed *pro se*. That choice was knowing and voluntary and was based on his unalterable belief that only he could properly present his defense. The trial was short and uncomplicated. [Bee] demonstrated his understanding of the issues and the consequences of waiving his right to counsel. Under these circumstances[,] there was no reason to appoint standby counsel.

Trial Court Opinion, 4/11/18, at 12 (footnotes omitted). Considering the above, we discern no error by the trial court in its decision not to appoint standby counsel. *See id.* Thus, Bee's third claim is without merit.

In his fourth claim, Bee avers that the court erred by not ordering a competency evaluation pursuant to *Edwards*, *supra*, because he suffers from a variety of mental disorders. *See* Brief for Appellant at 47-48, 49. Bee argues that he was denied a fair trial, and he seeks a new trial. *See id.* at 49-50.

In *Edwards*, the United States Supreme Court recognized that, when a defendant is not mentally competent to conduct his or her own defense, the United States Constitution permits the judge to require the defendant to be represented by counsel. *Edwards*, 553 U.S. at 556; *see also* Pa.R.Crim.P. 121, cmt. In order to prove that a defendant is not competent to waive his right to counsel, a defendant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his

own defense. ***Commonwealth v. Starr***, 664 A.2d 1326, 1339-40 (Pa. 1995). A defendant is presumed competent and bears the burden of establishing that he was unable to understand the nature of the proceedings. ***Commonwealth v. Mason***, 130 A.3d 601, 655 n.62 (Pa. 2015); ***Spotz***, 47 A.3d at 79. "Further, an evaluation of a criminal defendant's technical legal knowledge and courtroom skill is not relevant to an assessment of his knowing and intelligent exercise of the right to defend himself." ***Starr***, 664 A.2d at 1337 (citation omitted).

> Here, the court and Bee engaged in the following dialogue:
>
> THE COURT: Do you suffer from any mental health issues that might affect your ability to understand what is being said to you?
>
> [Bee]: No.
>
> THE COURT: Do you suffer from any mental health issues that might affect your ability to communicate with the jury?
>
> [Bee]: No.
>
> THE COURT: Do you suffer from any mental health issues that might interfere with your ability to make judgments and decisions?
>
> [Bee]: No.

N.T., 10/27/15, at 28.

> The trial court addressed Bee's fourth claim as follows:
>
> [Bee's] belated averments of mental deficiency are belied by the record. [Bee] was given a full colloquy with regard to his decision to waive his right to counsel on at least two occasions. This [c]ourt specifically inquired as to any potential health issues before accepting [Bee's] waiver of counsel.

- 17 -

*** 

> Given these statements, made under oath, and the fact that [Bee] failed by word or deed to indicate that he did not understand the proceedings or the significance of his decision to proceed *pro se*, his unsubstantiated claim of mental incompetence is insufficient to support a claim for relief.

Trial Court Opinion, 4/11/18, at 13 (footnote omitted). Considering the above, we discern no error in the trial court's decision to accept Bee's request to proceed *pro se*. **See id.** Thus, Bee's fourth claim is without merit.

In Bee's fifth claim, he argues that the evidence presented at trial was insufficient to support the conviction of possession of cocaine. **See** Brief for Appellant at 50. Bee claims that the Commonwealth did not present any evidence to establish that the glass pipes found in his bedroom contained cocaine. **See id.** at 51. Bee asserts that the residue amount of cocaine found on his digital scale was insufficient to support the conviction. **See id.** at 52.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

- 18 -

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

The Controlled Substance, Drug, Device and Cosmetic Act provides as follows, in relevant part:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

***

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

As this matter involves the interpretation of a statutory provision, we are guided by the principles set forth in the Statutory Construction Act (the "Act"). *See* 1 Pa.C.S.A. § 1501 *et seq*. Section 1921 of the Act specifies that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See id.* § 1921. However, statutory interpretation is not without its limits.

The plain language of the statute is the clearest indication of legislative intent, and when the words of a statute are clear and free from all ambiguity,

the letter of it is not to be disregarded under the pretext of pursuing its spirit. *See id.* § 1921(b). "It is only when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate." ***Commonwealth v. Dellisanti***, 876 A.2d 366, 369 (Pa. 2005) (citation omitted).

When construing statutory language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage…." 1 Pa.C.S.A. § 1903. A statute must "be construed, if possible, to give effect to all its provisions," so that no provision is rendered mere surplusage. *Id.* § 1921(a). When two such "statutes or parts of statutes… relate to the same persons or things or to the same class of persons or things," they are *in pari materia* and must be construed together as a single provision. *Id.* § 1932(a). "Where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded." ***Commonwealth v. Johnson***, 125 A.3d 822, 831 (Pa. Super. 2015) (citations omitted).

We glean from a plain reading of 35 P.S. § 780-113(a)(16) that it does not require the possession of a specific amount of cocaine in order to sustain a conviction. A plain reading of the provision indicates that our General Assembly has banned the act of knowingly or intentionally possessing cocaine, in any amount. Without the inclusion of a numerical value that indicates the minimum amount of cocaine required to sustain a conviction for its possession

under 35 P.S. § 780-113(a)(16), it is not in the province of this Court to read into the statute such a numerical value absent ambiguity or a legislative void. No such ambiguity or void exists here. Thus, we find that the text of 35 P.S. § 780-113(a)(16) indicates the legislature's intent to prohibit the possession of **any** amount of cocaine.

This finding of the General Assembly's intent with regard to the plain language of 35 P.S. § 780-113(a)(16) is consistent with the express statutory language of other prohibitive provisions under 35 P.S. § 780-101 *et seq*. For example, in prohibiting the possession of marijuana, the General Assembly delineated tiers of culpability based on the amount of marijuana possessed by an offender.[9] Plainly, the General Assembly's intent in delineating such tiers was to punish offenders according to the amount of marijuana the offender *de facto* possessed. **See** 35 P.S. § 780-113(a)(31). Pointedly, the General Assembly *did not* include such a tiered system for the possession of cocaine. **See Johnson**, 125 A.3d at 831 (stating, "where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent."). Indeed, if the General Assembly wished to criminalize the possession of a "usable," "weighable," or specific amount of cocaine, it would have done so. Thus, constrained by our rules of statutory construction, we find that a residue amount of cocaine is

---

[9] The amount of marijuana is weighed in grams.

- 21 -

sufficient to sustain a conviction under 35 P.S. § 780-113(a)(16). **See Commonwealth v. Williams**, 565 A.2d 160, 169 (Pa. Super. 1989) (holding "the Controlled Substance, Drug, Device and Cosmetic Act does not designate the minimum amount of a controlled substance which must be [possessed] to constitute grounds for criminal liability[.]").

Here, Bee testified that all of the physical evidence seized from his bedroom at 414 Daylily Drive was his. N.T., 11/10/15, at 15. Officer Gansky of the Bensalem Police Department testified that police found eight glass tubes that were used to smoke crack cocaine in Bee's bedroom. N.T., 11/9/15, at 107-08. Two of the pipes appeared to have been used. **Id.** Officer Gansky further testified that a digital scale was found in Bee's bedroom. **Id.** at 109. Joshua Folger of the Bucks County Crime Lab testified that the lab tested the residue found on the digital scale and determined that a residue amount of cocaine was present. **Id.** at 161. Bee's admission that he possessed all of the items seized in his bedroom, coupled with the testimony from Joshua Folger that cocaine residue was present on the digital scale found in his bedroom, is sufficient to sustain Bee's conviction for possession of cocaine. **See Commonwealth v. Harvard**, 64 A.3d 690, 699 (Pa. Super. 2013) (stating that "[a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.") (citation omitted). Thus, Bee's fifth claim is without merit.

In his sixth claim, Bee challenges the discretionary aspects of his sentence. Supplemental Brief for Appellant at 11-15.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> ***
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, Bee filed a timely Notice of appeal, preserved his sentencing claims in Post-Sentence Motions, and included a Rule 2119(f) Statement in his brief. Further, Bee's claim that the trial court miscalculated his prior record

score[10] by omitting an out-of-state felony conviction raises a substantial question. *See Commonwealth v. Janda*, 14 A.3d 147, 165 (Pa. Super. 2011) (holding that "improper calculation of a prior record score based on out-of-state offenses raises a substantial question."). Thus, we will review Bee's sentencing claims.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (citation omitted).

Bee contends that the trial court abused its discretion in imposing the excessive sentence where the prior record score considered a prior conviction of distribution of heroin/cocaine and did not reflect a prior conviction of intent to distribute less than 50 grams of marijuana. Supplemental Brief for Appellant at 16-17, 21-22. Bee also argues that the sentence did not reflect his lack of serious criminal history, the severity of the crimes, the need to

---

[10] Bee uses offense gravity score and prior record score interchangeably throughout his brief. Nevertheless, upon review, Bee is raising a claim regarding the alleged miscalculation of his prior record score. Moreover, Bee has not demonstrated that his offense gravity score for any of the convictions was incorrect.

- 24 -

protect the public, his education and work history, and his lack of violent behavior. *Id.* at 21

Our review of the record discloses that Bee's prior record score properly reflected Bee's criminal history. *See* Trial Court Opinion, 4/11/18, at 19 (stating that "[Bee] has continued to engage in misdemeanor and felony drug offenses over the span of more than twenty years despite the repeated intervention of the criminal justice system[;] sentences within the standard range of the sentencing guidelines cannot be deemed clearly unreasonable."); *see also* N.T., 3/3/16, at 5-10 (wherein the trial court reviews Bee's prior criminal history, including his out-of-state conviction); *id.* at 39. In fact, Bee's previous convictions for Driving Under the Influence (three times) and various other misdemeanors gave Bee a maximum prior record score of "5." *See* 204 Pa. Code § 303.4(a)(3).

Moreover, the trial court considered Bee's pre-sentence investigation report in imposing the sentence. N.T., 3/3/16, at 3-10, 13-14, 15-16; *see also Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (stating that "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.") (citation omitted). The trial court also considered the gravity of the offense in relation to the impact on the community, as well as Bee's rehabilitative potential. N.T., 3/3/16, at 16-25, 43-44; *see also*

*Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002) (stating that, in sentencing, the trial court "is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation.") (citation omitted); *id.* (noting that our law requires a sentencing court "to consider the prior criminal record to ascertain a defendant's amenability to rehabilitation[.]").

Additionally, the trial court took into account Bee's recent attainment of a degree from the Community College of Philadelphia, Bee's own testimony, and the testimony of Bee's mother. N.T., 3/3/16, at 15-20, 26-32, 34, 38, 44. The trial court also had discretion in imposing the sentences consecutively. *See Moury*, 992 A.2d at 171 (holding that the trial court "has discretion to impose sentences consecutively or concurrently[.]"). Thus, we discern no abuse of discretion, and cannot grant Bee relief on his sentencing claims. *See Commonwealth v. Andrews*, 720 A.2d 764, 768 (Pa. Super. 1998) (rejecting defendant's argument that the sentencing was focused on his prior criminal history in imposing the sentence, as a review of the record demonstrated that the court took a number of factors into consideration).

In light of the foregoing, Bee's claims are without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/21/18</u>